UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRANDON DIAZ, *on behalf of himself and others similarly situated*,

                Plaintiff,

– against –

BRONX PAWNBROKER INC., CONCOURSE PAWNBROKERS, INC., CONCOURSE NY REALTY INC., FANG HUNG WU, and MICHELLE WU,

                Defendants.

**OPINION AND ORDER**

18 Civ. 7590 (ER)

RAMOS, D.J.:

        Brandon Diaz initiated this action on August 20, 2018, asserting claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Doc. 1. Pending before the Court are Defendants' motion to dismiss and for summary judgment, and Diaz's motion to compel Defendants Bronx Pawnbroker Inc. and Concourse Pawnbrokers, Inc. to produce computer records reflecting all pawn transactions between 2015 and 2018. Docs. 53 and 76.

        For the reasons set forth below, Diaz's claims against Defendant Concourse NY Realty Inc. and for retaliation against all other Defendants are DISMISSED, and the motions are otherwise DENIED. Additionally, partial summary judgment for Diaz is GRANTED sua sponte.

I.  BACKGROUND

   A. Factual Background

Bronx Pawnbrokers and Concourse Pawnbrokers are pawn shops in the Bronx that dealt almost exclusively with the sale and pawning of jewelry.[1]  Doc. 75-2 ¶¶ 2–3.  Diaz worked for both pawn shops from March 2015 until September 2017, and then again from October 2017 until August 6, 2018.  *Id.* ¶ 2.  At both shops, Diaz worked the register and conducted transactions with customers.  *Id.* ¶¶ 3–4.  At all relevant times, Defendant Michelle Wu was the owner of both pawn shops, Docs. 55 ¶ 2 and 75-4 at 39:20–40:2, and Defendant Fang Hung Wu was the owner of Concourse NY Realty Inc., which is a real estate business, Docs. 56 ¶¶ 2, 4 and 74 ¶ 1.

Both pawn shops were open twenty-four hours a day roughly 360 days a year, and employees at both stores worked either a day shift or night shift.  *See* Docs. 54-3 at 45:23–24, 75-2 ¶ 7, and 75-4 at 57:16–25.  At Concourse Pawnbrokers, Diaz worked only the day shift, which spanned from 9:00 a.m. to 6:30 p.m.; at Bronx Pawnbroker, he sometimes worked the day shift and other times worked the night shift, which spanned from 6:20 p.m. to 9:00 a.m.  Doc. 75-2 ¶¶ 4, 8.  According to Diaz, on weeks that he worked the day shift, he worked approximately fifty-four hours for a six-day work week; on weeks that he worked the night shift, he worked approximately ninety hours for a six-day work week.  *Id.* ¶ 8.  Diaz alleges that throughout his employment he was paid below the minimum wage and that, despite these hours, he did not receive a premium for overtime or spread of hours.  Doc. 1 ¶¶ 29–31.

According to the Complaint, on July 13, 2018, counsel for Diaz sent a letter to Fang Hung Wu, Bronx Pawnbroker, and Concourse Pawnbrokers, indicating that he had retained counsel and was investigating potential wage-and-hour violations.  *Id.* ¶ 40.  On

---

[1] Concourse Pawnbrokers is no longer in operation, although the record does not reflect when it closed.  *See* Doc. 75-4 at 38:3–39:3.

August 6, 2018, Michelle Wu fired Diaz, accusing him of masturbating while at work. Docs. 54-3 at 88:8–91:23 and 74 ¶ 8.

### B. Procedural History

Diaz filed the instant suit on August 20, 2018. Doc. 1. In his complaint, he asserts three claims under the FLSA (failure to minimum wage, failure to pay overtime, and retaliation) and five claims under the NYLL (failure to pay minimum wage, failure to pay overtime and spread of hours, failure to provide annual notice, failure to provide wage statements, and retaliation). *Id.* On April 20, 2020, Defendants filed the instant motion to dismiss and for summary judgment. Doc. 53. Specifically, Defendants move to dismiss Concourse NY Realty as a party pursuant to Federal Rule of Civil Procedure 12(b)(6), and move for summary judgment on the issues of whether (1) Michelle Wu was an "employer" under the FLSA and NYLL, (2) Bronx Pawnbroker and Concourse Pawnbrokers constitute enterprises engaged in commerce and Diaz is an individual engaged in commerce under the FLSA, and (3) Diaz's termination constituted retaliation. *Id.* Additionally, Defendants moves the Court to decline exercising supplemental jurisdiction over Diaz's NYLL claims if summary judgment is granted on all of his FLSA claims. Doc. 54. On June 18, 2020, Diaz filed the instant motion to compel Bronx Pawnbroker and Concourse Pawnbrokers to produce all computer records reflecting pawn transactions between the years 2015 and 2018. Doc. 76.

## II.   DISCUSSION

### A. Legal Standards

*1. Summary Judgment*

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). A fact is "material" if it might affect the outcome of the litigation under the governing law. *H.Daya Int'l Co., Ltd. v. Arazi*, 348 F. Supp. 3d 304, 308 (S.D.N.Y. 2018). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."

*Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture, or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). "Only disputes over 'facts that might affect the outcome of the suit under the governing law' will preclude a grant of summary judgment." *Malmsteen v. Universal Music Grp., Inc.*, 940 F. Supp. 2d 123, 130 (S.D.N.Y. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). As such, to defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson*, 477 U.S. at 256–57).

"District courts have the discretion to grant summary judgment sua sponte, even without notice in certain circumstances." *Jian Yang Lin v. Shanghai City Corp*, 950 F.3d 46, 49 (2d Cir. 2020) (per curiam) (quoting *Schwan-Stabilo Cosmetics GmbH & Co. v. Pacificlink Int'l Corp.*, 401 F.3d 28, 33 (2d Cir. 2005)). "When doing so, however, they must take care 'to determine that the party against whom summary judgment is rendered

4

has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried, and that the party for whom summary judgment is rendered is entitled thereto as a matter of law.'" *Id.* (quoting *Ramsey v. Coughlin*, 94 F.3d 71, 73–74 (2d Cir. 1996)). To that end, "[a] notice-free, sua sponte entry of summary judgment is 'firmly discouraged' and is limited only to situations when there is no indication that the party against whom summary judgment would be entered could present evidence that would affect the summary judgment determination." *ING Bank N.V. v. M/V TEMARA, IMO No. 9333929*, 892 F.3d 511, 524 (2d Cir. 2018) (quoting *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 139 (2d Cir. 2000)). Notably, the risk that a party already moving for summary judgment suffers procedural prejudice "'greatly diminishe[s]' when the court's decision 'is based on issues identical to those raised by the moving party' and 'the moving party speaks to those issues in the course of the district court proceedings.'" *See Medacist Sols. Grp., LLC v. Carefusion Sols., LLC*, No. 19 Civ. 1309 (JMF), 2021 WL 293568, at *4 (S.D.N.Y. Jan. 28, 2021) (quoting *Bridgeway*, 201 F.3d at 140); *see also Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991).

    2. *Supplemental Jurisdiction*

When a district court has original jurisdiction over a claim, that court wields the power to exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, when none of the claims providing the court with original jurisdiction remains before the court, it may decline to exercise supplemental jurisdiction over the surviving claims. *Id.* § 1367(c)(3); *see also Francois v. N.Y.C. Dep't of Educ.*, No. 19 Civ. 11119 (ER), 2021 WL 603226, at *3 (S.D.N.Y. Feb. 16, 2021). In determining whether to exercise supplemental jurisdiction over remaining claims, a court should "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity . . . ." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343,

5

350 (1988). "When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Id.* (footnote omitted).

### B. Withdrawal of Claims

As an initial matter, the Court notes that, in response to Defendants' motion, Diaz seeks to withdraw all claims against Concourse NY Realty Inc. as well as his retaliation claim against all Defendants. Doc. 73 at 4. Accordingly, those claims are dismissed without prejudice. *See* Fed. R. Civ. P. 41(a)(2).

### C. Enterprise Coverage Under the FLSA

Defendants argue that all remaining federal claims should be dismissed because Diaz has failed to show that he is covered under the FLSA. "The minimum wage and overtime provisions of the FLSA apply to employees who are either (1) 'engaged in commerce or in the production of goods for commerce,' or (2) 'employed in an enterprise engaged in commerce or in the production of goods for commerce.'" *Jai Fu Chen v. New 9th Ave Pearl on Sushi Inc.*, No. 14 Civ. 580 (JPO), 2015 WL 3947560, at *3 (S.D.N.Y. June 29, 2015) (quoting 29 U.S.C. § 206(a) and § 207(a)(1)). These two categories are commonly referred to as "individual coverage" and "enterprise coverage." *See Rocha v. Bakhter Afghan Halal Kababs, Inc.*, 44 F. Supp. 3d 337, 342 (E.D.N.Y. 2014). For the purposes of enterprise coverage, an enterprise is "engaged in commerce or in the production of goods" if it is a business (1) that "has employees engaged in commerce or in the production of goods for commerce, *or* that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" *and* (2) that has an annual gross revenue of at least $500,000. 29 U.S.C. § 203(s)(1)(A) (emphasis added); *see also Jai Fu Chen*, 2015 WL 3947560, at *3; *Rocha*, 44 F. Supp. 3d at 346.

Defendants contend that no reasonable juror could conclude that Bronx Pawnbroker and Concourse Pawnbrokers, individually or combined, grossed more than $500,000 in any one year and, therefore, that no reasonable juror could find that Defendants were covered under the FLSA under the enterprise coverage provision.[2] Defendants contend that Diaz has not produced any documents or other evidence to suggest that any Defendants had gross annual revenue that exceeded the financial threshold. Further, Defendants note that they have submitted federal and state tax documents for both Bronx Pawnbroker and Concourse Pawnbrokers that indicate that neither business exceeded $500,000 in annual gross revenue. *See* Doc. 54-1. Defendants also rely on Michelle Wu's affidavit, which states that the combined annual gross volume of sales of Bronx Pawnbroker and Concourse Pawnbrokers was below $500,000 at all relevant times. Doc. 55 ¶ 4.

However, Diaz has submitted evidence that establishes a genuine issue of material fact. As an initial matter, "[t]he mere fact that Defendants have produced tax returns . . . is insufficient to support a motion for summary judgment" on the issue of whether gross annual revenues have exceeded $500,000. *Jai Fu Chen*, 2015 WL 3947560, at *3; *see also Rocha*, 44 F. Supp. 3d at 348–50; *Shu Lan Chen v. Gypsophila Nail & Spa Inc.*, No. 15 Civ. 2520 (JPO), 2015 WL 3473510, at *3 (S.D.N.Y. June 2, 2015) (noting that several courts in this Circuit "considering businesses' tax returns at the summary judgment stage have expressed skepticism about their reliability, especially where the returns are unauthenticated or where they conflict with other evidence"). But regardless of whether these tax documents—coupled with Michelle Wu's statement that the businesses failed to exceed $500,000 in annual revenue during the relevant time period—could be sufficient

---

[2] Defendants characterize the enterprise coverage requirement as a "jurisdictional prerequisite." Doc. 54 at 17–18. However, courts in this Circuit "have generally held that the enterprise coverage requirement is an issue that goes to the merits of a plaintiff's claim, not an issue of the Court's jurisdiction." *Jai Fu Chen*, 2015 WL 3947560, at *3 n.3 (collecting cases).

7

for the purpose of summary judgment, Diaz has "come forward with facts that establish a genuine issue for trial," as he has offered sworn affidavits estimating the gross annual sales of both pawn shops. *Shen v. John Doe Corp.*, No. 16 Civ. 2015 (GBD) (JCF), 2016 WL 7217850, at *3 (S.D.N.Y. Dec. 13, 2016), *report and recommendation adopted*, No. 16 Civ. 2015 (GBD) (JCF), 2017 WL 111746 (S.D.N.Y. Jan. 11, 2017); *see also Ying Shun Zhao v. Sunny 93 Hotel Corp.*, No. 14 Civ. 1847 (JG) (MDG), 2015 WL 5307716, at *4 (E.D.N.Y. Sept. 10, 2015); *Monterossa v. Martinez Rest. Corp.*, No. 11 Civ. 3689 (JMF), 2012 WL 3890212, at *4 (S.D.N.Y. Sept. 7, 2012). Specifically, both Diaz and Winner Salas, who worked for Defendants between 2007 and 2019, submitted affidavits stating that they could calculate approximately how much revenue the pawn shops generated, as they worked at the registers at both stores. Docs. 75-1 ¶¶ 2, 5 and 75-2 ¶ 5. The affidavits note that both stores were open twenty-four hours a day, and were open about 360 days a year between 2015 and 2018. Docs. 75-1 ¶ 7 and 75-2 ¶ 7. According to their calculations, approximately 200 customers would visit Concourse Pawnbrokers during the day and a smaller number would at night. Docs. 75-1 ¶ 5 and 75-2 ¶ 5. Based on their observations, they estimate that Concourse Pawnbrokers and Bronx Pawnbroker generated $30,000 and $15,000, respectively, in daily revenue. Docs. 75-1 ¶¶ 5–6 and 75-2 ¶¶ 5–6. According to these estimates, both shops—individually and collectively— "would gross well over $500,000 annually even if" Diaz and Salas "considerably overestimated the [shops'] daily earnings." *See Moterossa*, 2012 WL 3890212, at *4.

In response, Defendants argue that neither affiant has properly laid a foundation for his estimation of Defendants' annual revenue and attack the credibility of those estimates, asserting that the projected figures far exceed what any reasonable juror could conclude about Defendants' revenue. However, several other courts in this Circuit have found that such revenue estimates by employees are more than sufficient to raise a fact issue in the face of tax documents to the contrary, given that those estimates are based on the employees' experience and observations. *See Rocha*, 44 F. Supp. 3d 349–50; *Shen*,

8

2016 WL 7217850, at *3–4; *Jai Fu Chen*, 2015 WL 3947560, at *1, 3; *Zhao*, 2015 WL 5307716, at *4; *Chang Mei Lin v. Yeh's Bakery, Inc.*, No. 12 Civ. 2146 (JG), 2013 WL 867436, at *3 (E.D.N.Y. Mar. 7, 2013); *Monterossa*, 2012 WL 3890212, at *4. As such, these affidavits create a question of fact that would entitle a reasonable juror to conclude that Defendants earned more than $500,000 in gross volume of sales during all relevant times. *See Moterossa*, 2012 WL 3890212, at *4; *see also Chang Mei Lin*, 2013 WL 867436, at *3. Any determination regarding the credibility of figures stated in the tax documents or the affidavits is, thus, properly left to the fact-finder. *See Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997); *see also Jai Fu Chen*, 2015 WL 3947560, at *3. Accordingly, the Court denies summary judgment on this issue.[3]

### D. Michelle Wu's Status as an Employer Under the FLSA and NYLL

Defendants also move for summary judgment on the issue of whether Michelle Wu is an employer under the FLSA. The FLSA does not include a definition of an "employer" in the first instance, providing only that the term includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." *See* 29 U.S.C. § 203(d). However, it is well-settled that this term is interpreted broadly in the FLSA context, reaching beyond traditional agency law principles in order to "effectuate the remedial purposes of the act." *See Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (citing *United States v. Rosenwasser*, 323 U.S. 360, 363 (1945)). Therefore, the Court's determination of whether Michelle Wu is an employer under the FLSA must be grounded in "economic reality rather than technical concepts." *Id.* (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)); *see also*

---

[3] Defendants also argue that no reasonable juror could conclude that Diaz satisfies the individual coverage standard. Because there is at least a fact issue as to the enterprise coverage requirement—and therefore a fact issue regarding FLSA coverage—the Court need not and does not determine whether there is a fact issue regarding individual coverage.

*Guerra v. Trece Corp.*, No. 18 Civ. 625 (ER), 2020 WL 7028955, at *8 (S.D.N.Y. Nov. 30, 2020).

In light of that focus, the Second Circuit considers the following four factors when assessing whether an individual is liable as an employer for FLSA violations: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (quotation omitted). These factors are to be considered in the totality of circumstances. *Barfield*, 537 F.3d at 142–43. Further, none of these factors is dispositive, nor are they exclusive. *Id.* In addition to these factors, the Court may also consider any other relevant evidence of "functional control over workers even in the absence of the formal control measured by the *Carter* factors." *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 72 (2d Cir. 2003).

The New York Court of Appeals has not explicitly decided whether the standard for determining whether someone is an employer under the NYLL is coextensive with the FLSA analysis. *Guerra*, 2020 WL 7028955, at *9. However, the statutory standard is "nearly identical." *See Olvera v. Bareburger Grp. LLC*, 73 F. Supp. 3d 201, 206 (S.D.N.Y. 2014); NYLL § 190(3) ("'Employer' includes any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."). Accordingly, courts in this District have routinely applied the same tests to determine whether an individual is jointly liable as an employer under the FLSA and NYLL. *See Martin v. Sprint United Mgmt. Co.*, 273 F. Supp. 3d 404, 422 (S.D.N.Y. 2017); *see also Guerra*, 2020 WL 7028955, at *9. The Court will likewise do so here.[4]

---

[4] Although Defendants focus their argument on whether Michelle Wu is an employer under the FLSA, Defendants move for summary judgment regarding all claims against Michelle Wu—including Diaz's NYLL claims. *See* Doc. 54 at 5, 15. Because of the identical standards under the FLSA and NYLL

*1. The Power to Hire and Fire Employees*

Defendants argue that, as a matter of law, the evidence indicates that Michelle Wu lacked the power to hire employees. Specifically, Defendants point to Diaz's deposition testimony, in which he states that Fang Hung Wu hired him, that he had not met Michelle Wu during the entire first month he worked for Defendants, and that he spoke to Fang Hung Wu to get his job back after he had been fired for a week in 2017. Doc. 54-3 at 25:17–21, 42:9–15.

However, Diaz puts forth evidence that creates an issue of fact regarding Michelle Wu's ability to hire and fire employees. As Diaz notes, Michelle Wu testified that she conducted a background check and hired a private investigator to look into Diaz when he applied to work for Defendants. Doc. 75-4 at 44:19–24. Further, she reviewed his application and made the decision to hire him. *Id.* at 43:14–44:2. And regardless of whether she made the decision to hire Diaz, she testified that she had the authority generally to hire employees and actually did hire other employees. *Id.* at 43:14–22. Additionally, she made the decision to fire Diaz both times and informed him of the decision the second time. *Id.* 44:3–11; Doc. 54-3 at 81:6–24, 88:8–90:11. Thus, Diaz has put forth evidence to raise an issue of fact as to this factor.

*2. Supervision and Control of Work Schedules or Employment Conditions*

Defendants also contend that, as a matter of law, Michelle Wu neither supervised nor controlled work schedules or employment conditions. To support their argument, Defendants point to Diaz's testimony that Michelle Wu came into the pawn shops only once a week. Doc. 54-3 at 40:19–22. Further, Defendants note that Diaz testified that Michelle Wu did not act like a supervisor, as she did not tell the employees "how to do

---

regarding employer status, the Court construes Defendants' arguments regarding the FLSA to apply to the NYLL.

[their] job[s]." *Id.* at 40:23–41:6. Additionally, Diaz stated that another employee was responsible for making the employees' schedules. *Id.* at 41:7–17.

However, the record shows that there is at least a fact issue regarding this factor as well. Although insufficient by itself to establish employer status, *Irizarry v. Catsimatidis*, 722 F.3d 99, 110–111 (2d Cir. 2013), Michelle Wu owned both pawn shops at all relevant times, Docs. 55 ¶ 2 and 75-4 at 39:20–40:2. Further, Diaz testified that he had heard that Michelle Wu ultimately approved the schedules of employees. Doc. 54-3 at 41:7–13. Michelle Wu confirmed as much, testifying that, although she delegated the task of making schedules to other employees, she was responsible for approving the schedules and was the only person with the authority to do so, Doc. 75-4 at 27:16–24, 51:16–52:12, 75:3–13, and she stated that she notified Diaz what his pay and work schedule would be when he was hired, *id.* at 45:17–23, 46:14–47:12. Further, in their affidavits, both Salas and Jose Diaz, who worked for Defendants from 2011 until August 2016, state that Michelle Wu oversaw the supervisors at both pawn shops. Docs. 75-1 ¶ 14 and 75-3 ¶¶ 2, 10. Additionally, Michelle Wu testified that she supervised employees working during the night shift by using the pawn shops' surveillance cameras. Doc. 75-4 at 152:17–153:2. Based on this information, the Court concludes that there is far more than enough evidence to establish an issue of fact regarding whether Michelle Wu "supervised and controlled employee work schedules or conditions of employment." *See Irizarry*, 722 F.3d at 115 (quoting *Barfield*, 537 F.3d at 142)).

### 3. Determination of the Method and Rate of Payment

Defendants assert that the evidence establishes that Michelle Wu did not determine the method and rate of payment. As to this factor, Defendants point only to Diaz's testimony that he sometimes did not hear about Michelle Wu for months at a time and saw her infrequently. Doc. 54-3 at 41:20–23. That evidence, however, has nothing to do with whether Michelle Wu determined the method and rate of payment of employees. Moreover, Diaz has proffered substantial evidence to the contrary. Indeed, as Diaz notes,

Michelle Wu testified that she was responsible for handling payroll, determining how much the employees were paid, and determining that employees should be paid in cash. Doc. 75-4 at 27:16–24, 66:5–15, 71:23–72:4, 75:3–13. Further, she also testified that she informed Diaz about his starting pay rate and that he would be paid on a weekly basis, and stated that she determined what raises he received. *Id.* at 46:14–24, 49:6–12, 72:2–11, 93:7–17. Accordingly, there is at least a fact issue regarding this factor.

### 4. Maintenance of Employment Records

Acknowledging that they maintained scant employment records, Defendants argue that this factor favors a conclusion that Michelle Wu was not an employer. That argument fails for a few reasons. First, "even the complete failure to meet the fourth factor is 'not dispositive'" as to whether Michelle Wu is an employer. *Guerra*, 2020 WL 7028955, at *10 (quoting *Irizarry*, 722 F.3d at 116). Second, Defendants point to no evidence suggesting Michelle Wu failed to contemporaneously maintain employment records. And third, Diaz puts forth evidence that she did maintain such records. For example, Michelle Wu testified that she kept track of employee hours through a calendar, and maintained ledgers that show how much employees were paid. Doc. 75-4 at 62:10–64:15, 155:5–19. Accordingly, Defendants have failed to demonstrate the absence of material fact as to this factor.

### 5. The Totality of the Circumstances

The Court finds that there is significant, probative evidence on which a reasonable fact-finder could decide that Michelle Wu is liable as an employer, as there is sworn testimony supporting each of the four *Carter* factors.[5] *See Saenger*, 706 F. Supp. 2d at 504. Accordingly, Defendants' request for summary judgment on this issue is denied.

---

[5] Of course, Diaz need not raise a fact issue regarding every factor to survive summary judgment. *See Barfield*, 537 F.3d at 143; *see also Guerra*, 2020 WL 7028955, at *10.

13

### 6. Granting Summary Judgment for Diaz

Based on the entirety of the record, the Court concludes that, as a matter of law, Michelle Wu was Diaz's employer under the FLSA and NYLL. First, the evidence is undisputed that Michelle Wu had the power to hire and fire employees. Even though there may be evidence disputing whether Michelle Wu hired Diaz, *see* Doc. 54-3 at 25:15–21, 42:9–15, she testified that she was the only person who had the authority to hire employees and that she made the decision to fire Diaz both times—facts that Defendants do not dispute. The Second Circuit has held that a supervisor who possesses, but rarely exercises, the power to hire or fire anyone she chooses still can satisfy this factor. *See Irizarry*, 722 F.3d at 114–116 (citing *Herman v. RSR Sec. Servs., Ltd.*, 172 F.3d 132, 140 (2d Cir. 1999)); *see also Guerra*, 2020 WL 7028955, at *9. The undisputed evidence here exceeds that threshold. Accordingly, this factor weighs in favor of finding that Michelle Wu was an employer.

Second, the Court concludes that, as a matter of law, Michelle Wu supervised and controlled work schedules and employment conditions. As an initial matter, "this factor does not require that the employer exercise their power to control work conditions with any particular level of frequency to weigh in favor of employer status." *Guerra*, 2020 WL 7028955, at *9; *see also Herman*, 172 F.3d at 139 ("Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA[.]"). Here, the undisputed evidence far exceeds that low bar. Michelle Wu owned both pawn shops during the relevant time period. Docs. 55 ¶ 2 and 75-4 at 39:20–40:2. Although she did not frequent the pawn shops, Doc. 54-3 at 40:19–41:6, the record indisputably shows that she oversaw the direct supervisors on the day shift and supervised employees by video during the night shift, Docs. 75-1 ¶ 14, 75-3 ¶ 10, and 75-4 at 152:17–153:2. Further, it is uncontested that she was the only person with the authority to approve work schedules for the shops' employees. Doc. 75-4 at 27:16–24, 51:16–52:12. Thus, there is no fact issue whether Michelle Wu, either directly

or through other employees, supervised and controlled the work schedules and employment conditions at Bronx Pawnbroker and Concourse Pawnbrokers. *See Irizarry*, 722 F.3d at 116; *see also Herman*, 172 F.3d at 139. Accordingly, this factor indisputably favors employer status.

Defendants, as noted above, provide no probative evidence refuting the last two *Carter* factors; conversely, Diaz shows that there is no genuine issue of material fact disputing that both factors favor employer status. *See Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson*, 477 U.S. at 256–57). Regarding the third factor, Michelle Wu testified that she handled the payroll, determined employee pay rates, and decided that employees should be paid in cash. Doc. 75-4 at 27:16–24, 66:5–15, 71:23–72:4, 75:3–13. And to the extent that examining the fourth factor is necessary here, *see Guerra*, 2020 WL 7028955, at *10 (citing *Irizarry*, 722 F.3d at 106), Michelle Wu also testified that she kept a calendar with employee hours and maintained ledgers showing how much employees were paid, Doc. 75-4 at 62:10–64:15, 155:5–19. Accordingly, as a matter of law, all four *Carter* factors weigh in favor of employer status. The Court therefore concludes, in the totality of the circumstances, that Michelle Wu is an employer under the FLSA and NYLL.

The Court also concludes that Defendants would not be procedurally prejudiced by a sua sponte order granting summary judgment for Diaz. Defendants moved for summary judgment on this issue and proffered evidence in an attempt to show that there was no genuine dispute of material fact. *See Celotex Corp.*, 477 U.S. at 323. Notably, in their reply, Defendants failed to dispute any of the arguments or evidence Diaz put forth in his opposition, addressing only the enterprise coverage issue. Because Defendants had "significant incentive to put forward any compelling evidence in support of their summary judgment motion" on this issue and chose not to address Diaz's arguments and evidence to the contrary, *Coach Leatherware*, 933 F.2d at 167–68, "there is no indication that" Defendants "could present evidence that would affect the summary judgment

determination." *ING Bank N.V.*, 892 F.3d at 524. The Court therefore concludes that Defendants "had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried." *Jian Yang Lin*, 950 F.3d at 49 (quotation omitted); *see also Medacist*, 2021 WL 293568, at *4, 10. Accordingly, Diaz is entitled to summary judgment on this issue.

### E. Supplemental Jurisdiction

Defendants argue that, should the Court grant summary judgment with respect to claims brought under the FLSA, it should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367 with respect to Diaz's remaining claims brought under the NYLL. In light of the Court's denial of summary judgment as to the FLSA claims, Defendants' argument is moot. *See Monterossa*, 2012 WL 3890212, at *4.

## III. MOTION TO COMPEL

Diaz moves to compel discovery pursuant to Federal Rule of Civil Procedure 37(a)(1). Doc. 76. Under Rule 37(a)(1), a movant must include with his motion "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make . . . discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Diaz has satisfied this requirement. *See* Doc. 77.

Diaz made the request at issue in his second request for document production on October 1, 2019, seeking "[a]ll documents concerning all pawns processed by Plaintiff." Doc. 77-6 at 6. In her deposition, Michelle Wu testified that she had electronic records that showed how much money customers owed her on various pawns. Doc. 75-4 at 65:3–6. Referencing that testimony, Diaz asserts that Defendants have failed to turn over those electronic records regarding pawn transactions for the years relevant to the instant suit. As such, Diaz moves to compel Bronx Pawnbroker and Concourse Pawnbrokers to produce all computer records reflecting all pawn transactions covering the years 2015 through 2018. Doc. 76.

Diaz's request is without merit. When the parties met and conferred on December 15, 2019 regarding this issue, Defendants agreed to search the computer system that Michelle Wu testified about and to produce all responsive documents found on the computer system. Doc. 77-4 at 3. At the February 25, 2020 pre-motion conference, Defendants represented to the Court that Defendants' counsel had searched the computer at issue and determined there were no documents on it that were relevant to the discovery request. Doc. 81-1 at 9:25–10:4. The Court directed Diaz to draft a letter outlining additional requested items, and instructed the Defendants to respond by certifying that they conducted a search of the computer at issue and that they had turned over all responsive documents that were found. *Id.* at 10:6–18. Consistent with the Court's directives, Diaz sent Defendants a proposed certification asking them to certify, among other things, the following:

> Defendants have searched the computer system which Michelle Wu testified about during her deposition, including at p. 22 of the deposition transcript, and have produced all documents responsive to Request No. 5 from Plaintiff's Second Requests for Production ('All documents concerning all pawns processed by Plaintiff.').

Doc. 80-2 ¶ 1. Defendants, through Michelle Wu, responded with a certification that contained different language than Diaz's proposed certification, stating in relevant part:

> Defendants have searched the computer system and have produced all documents responsive to Request No. 5 from Plaintiff's Second Requests for Production ('All documents concerning all pawns processed by Plaintiff.'). The Defendants refer the plaintiff to Defendants [sic] document production bates stamped 'D Docs 046 through D Docs 108' and 'D Docs 125 through D Docs 188.'

Doc. 80-3 ¶ 3.

Diaz does not contest the Defendants' alteration of the proposed certification language; instead, he simply asserts that Defendants have failed to submit all documents

17

responsive to his request, noting that the only documents provided were handwritten ones—not computer records. *See* Doc. 81 ¶ 11. However, Defendants have represented to the Court and Diaz—both at the pre-motion conference and through a certified statement—that Defendants have searched through the computer system at issue and have produced all documents responsive to Diaz's discovery request, thereby complying with the Court's directive, and Diaz provides nothing more than conclusory allegations that Defendants have failed to turn over responsive documents despite those representations. Accordingly, Diaz's motion to compel is denied.

## IV.   CONCLUSION

For the foregoing reasons, Diaz's claims against Concourse NY Realty Inc. and his claims for retaliation against all Defendants are DISMISSED without prejudice, and Defendants' motion for summary judgment and Diaz's motion to compel are DENIED. Docs. 53 and 76. Partial summary judgment for Diaz is GRANTED sua sponte. Diaz's request for oral argument on his motion to compel is hereby denied as moot. Doc. 81. The parties are directed to appear for a telephonic status conference on March 16, 2021 at 10:00 a.m. The parties are directed to call (877) 411-9748 and enter access code 3029857, followed by the pound (#) sign when prompted. The Clerk of Court is respectfully directed to terminate the motions. Docs. 53 and 76.

It is SO ORDERED.

Dated:   March 2, 2021
         New York, New York

                                                    _____
                                                    EDGARDO RAMOS, U.S.D.J.